UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

STEPHEN N.,[1]

        Petitioner,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security
Administration,[2]

        Respondent.

Case No. 1:20-CV-00470-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Pending before the Court for consideration is Stephen N.'s Petition for Review of

the Respondent's denial of social security benefits, filed on October 6, 2020. (Dkt. 1.)

The Court has reviewed the Petition for Review, the parties' memoranda, and the

administrative record (AR), and for the reasons that follow, will remand the decision of

the Commissioner for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

## BACKGROUND

On February 2, 2018, Petitioner protectively filed a Title II and a Title XVI application for a period of disability and disability insurance benefits and supplemental security income, claiming disability beginning November 10, 2017. The applications were denied initially and on reconsideration, and a hearing was conducted on December 19, 2019, before Administrative Law Judge (ALJ) Wynne O'Brien-Persons. After considering testimony from Petitioner and a vocational expert, the ALJ issued a decision on January 31, 2020, finding Petitioner has not been under a disability since the alleged onset date through the date of the written decision.

Petitioner timely requested review by the Appeals Council, which denied his request for review on September 18, 2020. Petitioner timely appealed this final decision to the Court on October 6, 2020.

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the ALJ's written decision, Petitioner was fifty-eight years of age. Petitioner completed high school and police academy training. (AR 234.) Petitioner has previous work experience as a correction officer, customer security clerk, and cashier checker. (AR 23.)

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 3**

**DISCUSSION**

The following issues are raised on appeal:

1.  Whether Petitioner's left shoulder impairment is a medically determinable, severe impairment?

2.  Whether the ALJ properly evaluated Petitioner's subjective symptom testimony?

3.  Whether the ALJ properly evaluated the lay witness testimony?

4.  Whether the ALJ's RFC assessment, which omitted limitations due to Petitioner's left shoulder impairment and back pain, is supported by substantial evidence?

**ANALYSIS**

At step two,[3] the ALJ found Petitioner had the following medically determinable, severe impairments: "obesity, status post lumbar fusion with bilateral radiculopathy, diabetes mellitus, and gastritis." (AR 18.) At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 416.920(d), 416.925 and 416.926.

---

[3] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

**MEMORANDUM DECISION AND ORDER - 4**

Here, the ALJ determined Petitioner did not have an impairment or combination of impairments which met or were medically equal to Listing 1.04 (Disorders of the Spine). (AR 19.)  At step four, the ALJ determined Petitioner retained the residual functional capacity (RFC) to perform light  work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), "except he can never climb ladders, ropes, or scaffolds, but can occasionally engage in all other postural activities. The claimant must also avoid concentrated exposure to cold. Additionally, he must avoid all unprotected heights and hazardous moving machinery." (AR 19.) Relying upon testimony from the vocational expert, the ALJ determined that Petitioner would be able to perform his past relevant work as a customer security clerk. (AR 23.) The ALJ therefore did not proceed to step five.

Petitioner objects to the ALJ's RFC finding. He argues the ALJ failed to consider the evidence in the record establishing Petitioner's left shoulder impairment is medically determinable and severe at step two, and he challenges the ALJ's RFC determination on the grounds the ALJ did not include limitations caused by Petitioner's left shoulder impairment, and did not properly evaluate Petitioner's subjective symptom testimony or the lay witness statements. Accordingly, Petitioner contends the ALJ's finding that Petitioner retained the RFC to perform light work, and could return to his past relevant work, is in error.

1.     **Left Shoulder Impairment[4]**

Petitioner argues the ALJ failed to recognize Petitioner's left shoulder pain and restricted range of motion should have been considered a medically determinable, severe impairment and included in the RFC limitations. Respondent contends Petitioner's argument is without merit because Petitioner did not prove a medically determinable impairment at step two. Regardless, Respondent argues any failure to include limitations from Petitioner's shoulder impairment is harmless error, because the ALJ discussed the impairment and assessed limitations as a result of the same, citing the ALJ's RFC limitations to never climb ladders, ropes, or scaffolds. Petitioner counters that the ALJ's error is not harmless, because the limitations assessed do not address Petitioner's limitations on reaching, pushing, and pulling considering Petitioner is left-hand dominant.

The ALJ did not address Petitioner's left shoulder impairment at step two. (AR 18.) The only mention of Petitioner's left shoulder impairment appears later in the written decision, where the ALJ passively mentions that an x-ray of Petitioner's left shoulder taken on November 14, 2018, showed no significant arthropathy or acute abnormality. (AR 21.)

---

[4] Petitioner chose to address this issue last, and did not raise it in the context of the ALJ's step two discussion. However, it is appropriately considered at step two, because all medically determinable impairments, even if not severe, must be incorporated into a claimant's RFC. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 416.945(e) (the adjudicator "will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). *Accord,* 20 C.F.R. § 404.1523.

**MEMORANDUM DECISION AND ORDER - 6**

To the extent that the ALJ has entirely ignored or improperly discounted Petitioner's demonstrated medical impairments in undertaking the step two analysis, the ALJ has committed an error of law. Congress has mandated the process by which the adjudicator is to determine medical severity:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).

Even if not severe, the ramification of a failure to include a medically determinable impairment will manifest itself in assessing Petitioner's RFC. More specifically, SSR 96-8p requires the adjudicator to consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."

In Petitioner's adult function report, completed on March 5, 2018, Petitioner indicates he has difficulty reaching. (AR 254.) A left shoulder x-ray taken on November 14, 2018, revealed no acute bony abnormalities or significant arthritic changes. (AR

**MEMORANDUM DECISION AND ORDER - 7**

1158.) Petitioner sought follow up care for left shoulder pain on February 25, 2019, complaining of pain in his AC joint. (AR 1127.) He had received a cortisone injection six months earlier. (AR 1127.) Examination results revealed Petitioner's left shoulder lacks 20 degrees of abduction, and external rotation is limited to 45 degrees on the left compared to 60 degrees on the right. He was noted to be tender to palpation over the AC joint. Petitioner was diagnosed with arthritis of the left acromioclavicular joint, and his treatment provider administered a Kenalog injection into the left AC joint and shoulder. (AR 1127.) X-rays were reviewed, which the treatment provider explained show AC joint arthritis and confirmed that Petitioner's symptoms were consistent with the same. (AR 1128.)[5]

Treatment notes dated June 14, 2019, indicate Petitioner complained of left shoulder pain. (AR 1085 – 86.) He reported that the steroid shot received in February of 2019, relieved his pain for "about 30 days." (AR 1113.) Examination findings revealed pain with abduction and with raising his arm. (AR 1114.) He was provided an orthopedic referral. (AR 1089.)

At the hearing, Petitioner testified that reaching with his left upper extremity causes him pain. (AR 49.) He recounted the treatment he had received for his left shoulder pain, including receiving "a shot," and being referred for surgery. (AR 55.) He testified that he is left-handed, and that lifting and reaching with his dominant hand

---

[5] It is not clear from the record if additional x-rays were taken after November 14, 2018. The Court was unable to locate a later x-ray report.

**MEMORANDUM DECISION AND ORDER - 8**

causes pain. (AR 56.) The vocational expert testified that, if Petitioner is limited to occasional left overhead reach and occasional left pushing and pulling, he would be unable to perform any past relevant work. (AR 62 – 63.)

The Court finds the ALJ erred at step two, and that the error is not harmless on this record. At step two, the claimant bears the burden of furnishing evidence of medically determinable impairments. *See* 20 C.F.R. § 404.1512(a). "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or physiological abnormalities ...." § 404.1529(b). Physical examination results, as well as the treatment provider's commentary regarding Petitioner's x-ray findings, reveal a medically determinable impairment and diagnosis of AC joint arthritis of the left shoulder. Petitioner received treatment for the impairment. Even if not severe, the ALJ failed to acknowledge Petitioner's medically determinable impairment at step two and factor it into the RFC determination.

The error is not harmless here, because the vocational expert testified that a claimant limited in his ability to reach, lift, push or pull with his left upper extremity would be unable to perform his past relevant work. The Court rejects Respondent's claim that the ALJ's postural limitations account for Petitioner's diagnosis of left AC joint arthritis or reports of pain with reaching and lifting, because the limitations bear no relationship to Petitioner's ability to use his left upper extremity to reach, lift, push or pull.

**MEMORANDUM DECISION AND ORDER - 9**

The Court therefore finds the ALJ's failure to account for Petitioner's AC joint arthritis of the left shoulder at step two, and the later failure to account for potential limitations associated with the same in the RFC assessment, constitutes reversible error.

**2.      Subjective Symptom Testimony**

The ALJ considered Petitioner's subjective symptom testimony concerning his physical impairments, finding his testimony did not substantiate his subjective allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause his alleged pain, his statements concerning the intensity, persistence, and limiting effects of his pain are not entirely consistent with the evidence in the record. (AR 20.) The ALJ cited the following reasons for discrediting Petitioner's account of the severity of his pain: (1) inconsistency with medical evidence; and (2) daily activities that are inconsistent with Petitioner's allegations of pain.

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has

alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons[6] for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL

---

[6] Respondent contends the clear and convincing standard is inconsistent with the substantial evidence standard of review prescribed by Congress. Resp. Brief at 6 n.1. (Dkt. 21.) This argument has been repeatedly raised before the Court. Recently, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id*. at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This is so that the Court can meaningfully review the ALJ's decision. *Id*. In turn, the reasons for rejecting a claimant's testimony about his symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons, and determine whether the evidence is sufficient to support them. Accordingly, the Court finds no inconsistency.

**MEMORANDUM DECISION AND ORDER - 11**

1119029 at *1-2.[7] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### A.    Medical Evidence

The ALJ reviewed Petitioner's treatment records regarding his low back pain and diabetes. She noted Petitioner underwent an L5-S1 fusion in November of 2006, and

---

[7] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

showed improvement until a motor vehicle accident in July of 2014. (AR 20.) The ALJ then presented a list of Petitioner's treatment visits since the accident, and a summary of the findings noted in the treatment records. (AR 20 – 22.) The ALJ indicated that she considered the opinions of state agency medical evaluators Dr. Leslie Arnold and Dr. Myung Song, who were of the opinion Petitioner could perform the requirements of light work with postural limitations that the ALJ ultimately adopted for the RFC finding. (AR 22.) After summarizing Petitioner's treatment history, the ALJ concluded that the "longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms" because MRI results from January 16, 2018, showed no significant change in the L5-S1 fusion site; recent examinations indicate only mildly decreased sensation on the right and left, a normal gait and stance, and decreased motor strength in the right lower extremity; and laboratory testing showed improvement in Petitioner's diabetes. (AR 22.)

Petitioner contends that the recitation of a list of his treatment history, without any analysis, is legally insufficient to undermine his account of the severity of his pain. Petitioner argues that: (1) his MRI results, standing alone, do not provide a clear and convincing reason for finding his testimony less persuasive; (2) the ALJ cited to only one recent treatment note dated April 17, 2018, and mischaracterized the findings as well as failed to account for worsening symptoms in later treatment notes; and, (3) Petitioner's diabetes worsened, resulting in a diagnosis of diabetic neuropathy. Respondent counters that minimal objective findings can undermine a claimant's testimony, and that the ALJ

**MEMORANDUM DECISION AND ORDER - 13**

here properly relied upon the lack of objective medical evidence to discredit Petitioner's subjective allegations. Respondent recounts the same medical history as did the ALJ, contending that it supports the ALJ's conclusion.

The Court finds the ALJ's analysis is legally insufficient. She did not evaluate the medical records for internal consistency or inconsistency with regard to the description of Petitioner's symptoms of pain. If she had, she would have noted Petitioner consistently complained of acute worsening of his chronic low back pain since the motor vehicle accident in 2014. (AR 317, 362.) For example, on June 20, 2017, Petitioner reported that his back pain had worsened, and he experienced pain down to his ankles and that his buttocks were numb. (AR 390 – 392.) Examination results that date demonstrated tenderness to palpation of the lumbar spine and SI joints bilaterally. (AR 392.)

The MRI results from January 16, 2018, indicate that the hardware at the fusion site appeared unchanged, but that, at L4-L5, imaging revealed mild diffuse bulge/ridge extending through the foramina with mild-moderate left and mild right foraminal narrowing, with some bilateral subarticular narrowing and mild facet arthropathy. (AR 328, 377 - 378.) Petitioner complained of bilateral radiation of pain into the legs, worse with movement. (AR 329.) He rated his pain at an 8 on a 10 point scale. (AR 372.) At his follow up visit on January 24, 2018, to review his MRI results, Petitioner rated his pain at a 7 on a 10 point scale. (AR 379.) Findings at a later treatment visit on December 3, 2019, include limited spinal range of motion, and lower spine tenderness, left greater than right. (AR 1143.)

**MEMORANDUM DECISION AND ORDER - 14**

Petitioner's MRI and examination findings provide objective evidence of an underlying impairment. Once Petitioner produces medical evidence of an underlying impairment, the ALJ may not discredit Petitioner's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan* 947 F.2d 341, 343 (9th Cir. 1991)). Here, the ALJ concluded Petitioner's subjective pain symptoms were not as severe as alleged based solely upon the objective medical evidence, without evaluating the consistency or inconsistency of Petitioner's complaints contained in the records themselves. This was error.

Turning to Petitioner's diabetes, treatment notes from April 17, 2018, document positive neurologic findings, which include tuning fork mild decrease on the right and the left and monofilament abnormal on the right, decreased motor strength in the right lower extremity, and an abnormal monofilament test of the left foot. (AR 386.) Petitioner reported numbness in the bottom of his feet. (AR 389.) By May 7, 2019, his foot symptoms had worsened, with objective testing showing decreased sensation in his bilateral feet, interdigital erythema, fungal infection, and an increase in his lower extremity amputation prevention score from 0 to 1. (AR 1091.) Here again, the ALJ did not identify what evidence undermined Petitioner's complaints, nor did she discuss the contrary evidence showing worsening bilateral lower extremity neurological symptoms caused by Petitioner's diabetes.

**MEMORANDUM DECISION AND ORDER - 15**

Simply stating, in general terms, that the medical evidence undermines Petitioner's testimony, reciting a summary of the medical evidence, and picking out three medical records that allegedly support a general conclusion, is insufficient. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Rather, the ALJ must provide an explanation, and cite specific reasons, so that the Court may meaningfully review the ALJ's conclusions. *Id.* It is not the Court's responsibility to take a general finding, which in this case is an unspecified conflict between Petitioner's testimony and his reports to his physicians, and "comb the administrative record to find specific conflicts." *Id.* This is especially true where, as here, the ALJ failed to identify the specific testimony she found not persuasive, and failed to link the testimony to the particular medical records supporting her determination that Petitioner was embellishing his pain. *Id.* "Although the ALJ summarized a significant portion of the administrative record in support of her RFC determination, providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Id.*

The Court therefore concludes the ALJ provided unsatisfactory reasons for finding Petitioner's subjective symptom testimony is undermined by the medical evidence, and that the ALJ's findings are unsupported by substantial evidence in the record as a whole.

## B.    Petitioner's Daily Activities

The ALJ considered Petitioner able to perform a  "wide array of activities." (AR 22.) According to the ALJ, these activities included tending to personal care, driving a

**MEMORANDUM DECISION AND ORDER - 16**

motor vehicle, shopping in stores, managing money, socializing, and walking for up to one mile. (AR 22.) The ALJ concluded this "level of activity is not consistent with someone alleging severe" physical symptomology. (AR 23.)

Petitioner completed an adult function report on March 5, 2018. (AR 249.) In this report, he stated that he is limited with respect to sitting, standing, and lifting before his back starts hurting, and that if he sits for too long he has to either stand or change position. (AR 249, 253.) His typical day in 2018 consisted of making breakfast, driving to the library, going to church, and watching television. (AR 250, 253.) He reported trouble sleeping due to pain, and that he no longer took part in activities such as fishing, golfing, softball, or exercising. (AR 250.) His meal preparation consisted of sandwiches, soup, or frozen dinners. (AR 251.) He reportedly was able to do laundry and clean his house, but it took him 2 – 3 hours twice a week and he had trouble bending. (AR 251.) He shopped for groceries 2 – 3 times each week for up to one hour. (AR 252.) He reported being able to walk 1 mile before needing to stop and rest, and that his back limited his ability to lift, squat, bend, stand, reach, walk, sit, kneel, or climb stairs. (AR 254.)

At the hearing, Petitioner testified his back pain had worsened. (AR 45.) He testified that the pain extends into his buttocks and he experiences burning pain in his lower extremities. (AR 45, 50.) He has developed neuropathy in both feet, causing numbness and difficulty walking. (AR 45, 50.) He testified that he needs to change position if he sits or stands for too long, and estimated he could sit, stand, or walk for up to an hour each. (AR 45 – 46.) The only comfortable position for him is sitting in a

**MEMORANDUM DECISION AND ORDER - 17**

recliner with his legs up, and he testified he spends the majority of each day reclining. (AR 46.) He testified that bending, twisting, stooping, reaching, and kneeling causes pain. (AR 48, 49.) His church has provided him with living accommodations in exchange for him closing up the church each night, which consists of locking the doors and turning off the lights, for one hour each evening. (AR 51 – 52.) He is able to do these activities at his own pace and can stop and sit if he needs a break. (AR 52.)

Respondent contends, without analysis, that the ALJ's reasoning is sufficient to satisfy the clear and convincing standard. The Court disagrees. The "mere fact" that a claimant has carried on certain daily activities does not detract from Petitioner's sincerity as to his overall disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit in *Garrison* warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if the level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647

**MEMORANDUM DECISION AND ORDER - 18**

(7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)).

Here, Petitioner's daily activities, as he described them in his function report and during his testimony at the hearing, are consistent with his statements about the limitations caused by his pain. Petitioner's current activities consist of sitting in a recliner watching television, punctuated by time spent in the kitchen making a sandwich or heating soup. Petitioner performs some daily tasks for his church for about one hour each day, and socializes with friends regularly. In his 2018 function report, Petitioner indicated he was able to do chores such as laundry and cleaning, although they took a long time to complete.

These activities are "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 599, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")). Nor are

**MEMORANDUM DECISION AND ORDER - 19**

Petitioner's activities inconsistent with the pain Petitioner described, which he explained is exacerbated by prolonged walking, sitting, and standing.

The ALJ did not explain how the inconsistency between Petitioner's daily activities and his pain testimony supports her conclusion that Petitioner retained the ability to function competitively in a workplace environment at the light exertional level. Work at the light exertional level requires the ability to lift up to 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds, as well as walking or standing up to six hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. SSR 83-10; 20 C.F.R. § 404.1567. The ALJ provided no analysis to support her conclusion that Petitioner's ability to do simple chores, attend to his personal care, drive, and walk a mile[8] transfers to the workplace and supports a finding that Petitioner would be able to sustain the requirements of full-time competitive employment at the light exertional level. *Orn*, 495 F.3d at 639; *Garrison*, 759 F.3d at 1016.

Accordingly, the Court finds the ALJ's conclusion that Petitioner's daily activities are inconsistent with his testimony about his pain does not satisfy the requirement of a clear, convincing, and specific reason supported by substantial evidence in the record as a whole to discredit Petitioner's testimony concerning his pain-related impairments.

---

[8] While walking one mile may seem like a long walk, in the Court's experience, it generally takes about 20 minutes to walk that far. According to the Centers of Disease Control and Prevention, a moderate walking pace is 2.5 to 4 mph. Physical Activity Guidelines for Americans, p. 20, 2nd Edition, CDC, https://health.gov/sites/default/files/2019-09/Physical_Activity_Guidelines_2nd_edition.pdf

**MEMORANDUM DECISION AND ORDER - 20**

3.    **Lay Witness Testimony**

Petitioner submitted eleven letters from various friends, co-workers, and previous employers who described Petitioner's ability to walk, bend, stoop, lift, carry and sit, as well as Petitioner's observable manifestations of pain. (AR 292 – 303.) Many of these letters were from people who knew Petitioner well and interacted with him frequently. For example, Petitioner's former employer, Greg G., indicated that, at Petitioner's last position of employment, he was provided with accommodations such as avoiding bending or stooping, no lifting over 20 pounds, and the ability to ask for assistance. (AR 295.) Chip H., who worked with Petitioner for twelve years, noted Petitioner "struggles to walk." (AR 293.) Douglas H., who worked with Petitioner on the security staff for four years at the Boise Airport, observed Petitioner appeared to be "in a great deal of pain." (AR 296.) James C., who indicates he has known Petitioner for four years, observed Petitioner maneuvering and walking "slightly bent at the waist as if guarding his lower back." (AR 298.) Ed W., who has known Petitioner for seventeen years, observed Petitioner struggle with the "daily duties of bending down or carrying anything of significant weight," "struggle with normal functions like tying shoes," and had "observed him in pain and not able to even stand for any length of time without feeling uncomfortable." (AR 299.) Brad P., who attends church with Petitioner, indicated that he would like for Petitioner to participate on the church safety team but "his inability to lift, bend, or run prohibits these functions of duty." (AR 301.)

The ALJ indicated that she read and considered the third party statements, but

**MEMORANDUM DECISION AND ORDER - 21**

found them "only partially persuasive" in formulating the RFC because: (1) claimant's friends are not acceptable medical sources; (2) the statements were based "on casual observation alone;" and (3) the cumulative medical and objective evidence in the record "reflects fewer limitations." (AR 22.)

Petitioner contends the ALJ's reasons are neither specific, legitimate, nor germane to the witnesses, and that the ALJ did not provide sufficient insight as to the portions of the lay witness statements that were not persuasive and therefore not incorporated into the RFC. Respondent first contends the regulations applicable to claims filed on or after March 27, 2017, do not require an adjudicator to articulate how he or she considered evidence from nonmedical sources. Respondent next contends also that the three reasons the ALJ cited are, in fact, specific and legitimate. Finally, Respondent argues the ALJ properly rejected the statements for the same reasons as those considered by the ALJ in her rejection of Petitioner's subjective symptom testimony. Petitioner contends the Court cannot accept Respondent's final argument, because the reason was not given by the ALJ.

The 2017 regulations adjusted the requirements for an ALJ's consideration of nonmedical evidence. "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). According to Respondent, the 2017 regulations do not require an ALJ to "articulate how [she] considered evidence from nonmedical sources."

20 C.F.R. §§ 404.1520c(d), 416.920c(d). Consequently, Respondent appears to imply the ALJ is no longer required to provide "arguably germane reasons" for disregarding such statements, as the Ninth Circuit has traditionally required. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). *But see Joseph M. R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (asserting that 20 C.F.R. § 404.1520c(d) "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements").

Counter to Respondence inference, the Court finds that the regulatory changes do not absolve the ALJ from considering lay witness statements. *Jerri F. v. Kijakazi*, No. 1:20-4037-RMG-SVH, 2021 WL 3362227, at *14 (D. S.C. July 29, 2021), *report and recommendation adopted*, No. CV 1:20-4037-RMG, 2021 WL 3396230 (D. S.C. Aug. 3, 2021). 20 C.F.R. § 404.1520c dictates how the ALJ is to consider medical opinions and prior administrative medical findings. Subsection (d) of 20 C.F.R. § 404.1520c simply indicates that the ALJ does not have to articulate how she considered evidence from nonmedical sources "using the requirements in in subparagraphs (a) – (c)" for evaluating medical opinions. The regulation does not, therefore, eliminate the requirement to consider lay witness statements, and Respondent provided no authority indicating that the Ninth Circuit's standard for evaluating competent lay testimony is supplanted by 20 C.F.R. § 404.1520c(d).

The Ninth Circuit considers "lay testimony as to a claimant's symptoms or how an impairment affects ability to work…competent evidence...and therefore [it] cannot be

disregarded without comment." *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, [s]he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third party statements which are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used by the ALJ in rejecting Petitioner's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Respondent alternatively addressed the prevailing standard within the Ninth Circuit, arguing the reasons the ALJ did give for disregarding the third party statements are sufficient. The Court disagrees.

The ALJ's first reason for rejecting the lay witness statements is legally insufficient. SSR 16-3p (effective Mar. 28, 2016) expressly indicates the ALJ is to consider statements from "non-medical" sources such as "family and friends." Therefore, the ALJ's finding that Petitioner's friends are "not accepted medical sources" is a legally insufficient reason to reject their statements.

The ALJ's second reason for rejecting the lay witness statements is similarly inadequate. SSR 16-3p expressly requires the adjudicator to "consider any personal *observations* of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p (emphasis added). Accordingly, the ALJ cannot reject lay witness

**MEMORANDUM DECISION AND ORDER - 24**

statements because they are based upon "casual observation." The applicable policy interpretation is expressly at odds with the reason given by the ALJ. Further, it is inconceivable how a lay witness would otherwise provide information about a claimant's abilities other than by observation.

This leaves the ALJ's third reason for rejecting the lay witness statements which, standing alone, is legally insufficient. The ALJ found that the medical records were more persuasive and reflected fewer limitations than reported by Petitioner's friends, co-workers, and employers. In other words, the ALJ found the medical records simply did not support the third party observations of Petitioner's pain and resulting limitations. However, SSR 16-3p directs that the ALJ must "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Rather, minimal or negative findings in objective medical evidence is "*one* of the many factors" to consider when evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p (emphasis added). The ALJ must evaluate whether the statements are "consistent with" objective medical evidence and other evidence. SSR 16-3p.

Therefore, the ALJ committed legal error when she rejected statements by third party witnesses on the grounds that Petitioner's medical records do not corroborate his account of his pain. SSR 16-3p expressly directs the ALJ to consider the testimony of others when a claimant's alleged symptoms are not fully supported by medical records.

**MEMORANDUM DECISION AND ORDER - 25**

*See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (SSR 88–13 (superseded by SSR 16-3p) "directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by h[is] medical records.").

Respondent manufactures a final reason for the Court to uphold the ALJ's failure to consider the third party statements, contending that, since the statements are substantially similar to Petitioner's complaints, the ALJ's reasons for rejecting the latter apply with equal force to the lay witness statements. The Court rejects Respondent's argument. The ALJ did not cite this reason in support of her analysis. While the Court can uphold an ALJ's decision to reject a third-party statement for the same reasons given for rejection of the petitioner's complaints, *Valentine*, 574 F.3d at 694, the Court cannot affirm the ALJ here on a ground upon which she did not articulate, *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, the Court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's decision to discount Petitioner's subjective symptom testimony materially impacted her decision. (AR 22 - 23.) And, the ALJ's decision failed to properly consider the numerous third party observations supporting Petitioner's complaints of pain and functional limitations caused by pain.

The Court cannot determine with certainty that a reasonable ALJ, giving full credit

**MEMORANDUM DECISION AND ORDER - 26**

to the lay witness testimony, would have reached the same disability determination. Given the standard set forth in *Stout*, this was not harmless error. Accordingly, this case must be remanded for the ALJ to properly consider the lay witness testimony. If the testimony is rejected, the ALJ must provide specific reasons, germane to the witness, for doing so.[9]

## CONCLUSION

Although the Court concludes that the ALJ committed legal error, the Court declines to remand for an immediate award of benefits because the Court is not satisfied that "further administrative proceedings would serve no useful purpose." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). There was no testimony from the vocational expert whether other jobs exist in the national economy that Petitioner could perform, and no analysis whether Petitioner could perform the representative requirements of sedentary occupations.

As a result of the legal errors discussed above, the Court finds the ALJ's RFC determination is not free from legal error. Accordingly, the Court finds remand is appropriate for the ALJ to reconsider the evidence at steps two, four and five.

---

[9] The ALJ is not required to discuss every witness's testimony on an individualized basis. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

**MEMORANDUM DECISION AND ORDER - 27**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      The Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

DATED: December 22, 2021

Candy W. Dale
Chief U.S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 28